NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEGASO DEVELOPMENT, INC. and GEORGE PAPAZOGLOU, <br><br> Plaintiffs, <br><br> v. <br><br> IORA ACQUISITION ENTERPRISES LLC, et al., <br><br> Defendants. | Civil Action No: 21-3171(SDW)(LDW) <br><br> **OPINION** <br><br> October 18, 2021 |

**WIGENTON**, District Judge.

Before this Court is Defendants iOra Acquisition Enterprises LLC ("iOra Acquisition"), Black Dolphin Capital Management, LLC ("Black Dolphin"), and Greg Zilberstein's ("Zilberstein") (collectively, "Defendants") Motion to Dismiss Plaintiffs Pegaso Development, Inc. ("Pegaso") and George Papazoglou's ("Papazoglou") (collectively, "Plaintiffs") Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 9(b). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, the Motion to Dismiss is **DENIED**.

    **I.**      **BACKGROUND AND PROCEDURAL HISTORY**

Papazoglou is the sole principal of Pegaso, a Panamanian corporation. (D.E. 1 ¶¶ 5-6.) Zilberstein is the sole member of Black Dolphin, which is, in turn, the sole member of iOra

Acquisition.[1]  (*Id.* ¶¶ 7-9.)  Prior to the events in question, Plaintiffs allege a course of dealing with Zilberstein/Black Dolphin that involved two transactions that "Zilberstein organized for which he (directly and/or via Black Dolphin) received an interest of 18.25-25%" and for which Pegaso provided funds in exchange for an ownership interest.  (*Id.* ¶¶ 13-21.)

In August 2018, Plaintiffs allege that Zilberstein and Papazoglou entered into an oral contract to purchase iOra Software, Ltd. ("iOra Software").  (*Id.* ¶¶ 1-4, 23-24.)  In order to effectuate the purchase, Zilberstein proposed that: "(i) Papazoglou would provide an initial cash infusion of $120,000; (ii) these funds would go into a new entity [iOra Acquisition] that would be jointly owned by [the two men]; (iii) Papazoglou's $120,000 would be the sole source of upfront cash to purchase iOra Software; (iv) Papazoglou would provide additional cash up to $380,000 as necessary to fund the rest of the iOra Software acquisition if iOra Acquisition could not pay for this as a result of revenues from operations after the" purchase.  (*Id.* ¶¶ 23-25.)  Papazoglou agreed to the terms and wired the initial payment to Zilberstein, who formed iOra Acquisition and purchased iOra Software.  (*Id.* ¶¶ 27-32.)  On or about September 4, 2018, Zilberstein provided Papazoglou with the asset purchase agreement between iOra Acquisition, iOra Software and the iOra Software administrator.  (*Id.* ¶ 33-34.)  The following day, Papazoglou informed Zilberstein

---

[1] The Complaint alleges that Zilberstein "completely and exclusively dominates and controls Black Dolphin to the point that it has no legal or independent significance of its own." (D.E. 1 ¶ 68.) To sufficiently plead that a corporation is merely an alter ego of an individual such that a court may pierce the corporate veil, a party must show that an individual has "complete dominion, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (internal citation omitted). To show such dominion, a court must consider factors including: "gross undercapitalization . . . failure to observe corporate formalities . . . siphoning of funds of the corporation by the dominant stockholder . . . absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder . . .." *Id.* (internal citations omitted).  Plaintiffs have made such a showing, pleading that Black Dolphin and Zilberstein share the same offices, email addresses, and legal counsel, fail to observe required corporate formalities, and operate Black Dolphin to help Zilberstein avoid creditors and improperly transfer funds for his own personal use.  (*Id.* ¶¶ 68-74.)

that he "expect[ed] to receive the document describing my involvement in iOra" and Zilberstein responded that the deal was "done. Will call you tomorrow." (*Id.* ¶¶ 35-36.) The agreement was not memorialized in writing.

For approximately six months after the September 2018 closing, Plaintiffs allege that Pegaso participated in iOra Acquisition's business affairs as an equity owner, with Papazoglou visiting iOra Software's offices with and without Zilberstein, communicating with the iOra Software administrator regarding Papazoglou's efforts to generate business for the company, and receiving communications from Zilberstein regarding the completion of remaining terms of the acquisition agreement. (*See id.* ¶¶ 38-53.) Plaintiffs allege, however, that Zilberstein "consistently failed to uphold his part of the deal and transfer the ownership interest (and documentation thereof) . . . to Pegaso/Papazoglou." (*Id.* ¶ 55.) Rather, Plaintiffs claim that Zilberstein proposed multiple "alternative arrangements" to Papazoglou "to convince [him] to drop his equity participation . . ." and attempted to recast the initial $120,000 payment as an advance on a separate business loan. (*Id.* ¶¶ 55-59.) Papazoglou rejected those arrangements and hired counsel to finalize the equity deal. (*Id.* ¶ 60.) On May 7, 2019, Zilberstein informed Papazoglou: "If there was any relationship between us on a going forward basis I no longer want any partners in our business." (*Id.* ¶¶ 60-61.)

On February 22, 2021, Plaintiffs filed a two-count Complaint against Defendants seeking declaratory judgment that the parties entered into a contract to buy iOra Software and that Pegaso holds a 75% interest in iOra Acquisition with rights to a 75% share of past equity distributions or, in the alternative, asserting a claim for common law fraud[2] and seeking a declaratory judgment

---

[2] Plaintiff alleges that "[i]f Zilberstein denies the existence of the Contract, then he committed fraud by knowingly, intentionally and recklessly misrepresenting that [Plaintiffs] would receive an ownership interest in iOra Acquisition

3

that Black Dolphin is Zilberstein's alter ego. (*See* D.E. 1 ¶¶ 75-88.)  Defendants subsequently moved to dismiss, and all briefing was timely filed.  (D.E. 12-1, 17, 20.)

   II.   **LEGAL STANDARD**

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint

---

to cause [Plaintiffs] to send and agree to send all of the cash consideration necessary for the acquisition of iOra Software by iOra Acquisition."  (D.E. 1 ¶¶ 81.)

should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs "alleging fraud must state the circumstances of the alleged fraud[ulent act] with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Park v. M & T Bank Corp.*, Civ. No. 09–02921, 2010 WL 1032649, at *5 (D.N.J. Mar. 16, 2010) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).

### III.  DISCUSSION

Under New Jersey law, a valid contract exists where there is: "1) a meeting of the minds; 2) offer and acceptance; 3) valid consideration; and 4) reasonably certain contract terms." *Grossman v. Parking Auth. of City of Camden*, Civ. No. 12-3097, 2013 WL 1144830, at *3 (D.N.J. Mar. 18, 2013). Reasonably certain contract terms do not require that "each term must be exactly spelled out" provided the court "can determine the contracts 'essential terms' to which the parties manifested an intent to be bound . . ." *Lo Bosco v. Kure Eng'g, Ltd.*, 891 F. Supp. 1020, 1025 (D.N.J. 1995).  Here, Plaintiffs have adequately pleaded facts to establish those four elements. First, Plaintiffs have pled that the parties agreed to purchase iOra Software. To effectuate that purchase, Zilberstein offered to create iOra Acquisition, provided that Pegaso contributed $120,000.00 to cover the initial purchase price and committed to provide additional funds as necessary. In exchange, Plaintiffs were to receive a 75% equity stake in iOra Acquisition, an amount that was consistent with prior deals between the parties. Plaintiffs made their initial payment and Zilberstein created iOra Acquisition and purchased iOra Software. Plaintiffs then

5

repeatedly asked for confirmation of their ownership interest and acted as an equity owner without opposition from Zilberstein. Viewing the pleadings in the light most favorable to Plaintiffs, the facts as set forth are sufficient to show that that Plaintiffs may be entitled to the declaratory relief they seek.[3]

As to Plaintiffs' fraud in the inducement claim, pled in the alternative to their declaratory judgment claim, it too may proceed. Fraud in the inducement requires a party to show: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech. Group., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012). Plaintiffs have pled this count with sufficient specificity, alleging that Zilberstein represented to Plaintiffs that they would receive an equity share in iOra Acquisition knowing that he did not intend to give them such an interest, and Plaintiffs relied upon that representation when agreeing to the purchase of iOra Software. Therefore, Defendants' motion to dismiss this claim will be denied.[4]

---

[3] Defendants' opposition hinges largely on the argument that there was no agreement as to the equity interest, and, therefore, no enforceable contract. (*See* D.E. 12-1 at 15-17.) In making their argument, Defendants contend that Plaintiffs "fail to allege a multitude of . . . material terms that sophisticated investors like Plaintiffs would typically include in" similar agreements. (*Id.* at 17.) Such a failure, even if true, however, is not the standard this Court applies on a motion to dismiss. Plaintiffs need only need plead facts such that any reasonable reading of the Complaint would entitle them to relief, which they have done. Defendants' challenge to Plaintiffs' allegations regarding the parties' course of dealing and post-transaction activities would require this Court to consider exhibits attached to Defendants' opposition brief, including promissory notes, emails, and filings in other lawsuits. (*Id.* at 18-21, Ex. B-N.) Consideration of those materials, however, is inappropriate at this time. *See In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (noting that generally a court may only consider the contents of the complaint on a 12(b)(6) motion to dismiss). Those materials raise questions of fact best resolved at summary judgment after discovery is completed and are beyond the scope of this Court's review at this stage of the proceedings. This Court takes no position on the propriety of submitting those materials should the parties later move for summary judgment.

[4] The economic loss doctrine presents no bar to Plaintiffs' fraud claim. The doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract." *Chen v. HD Dimensions Corp.*, Civ. No. 10-863, 2010 WL 4721514, *8 (D.N.J. Nov. 15, 2010.). However the doctrine does not apply to claims brought in the alternative or claims for fraud in the inducement where the fraud induces a party to enter into a disputed contract. *See e.g., State Cap. Title & Abstract Co. v. Pappas Bus. Servs.*, 646 F. Supp. 2d 668, 677 n.3 (D.N.J.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**. An appropriate order follows.

                                                       /s/ Susan D. Wigenton  
                                            **SUSAN D. WIGENTON, U.S.D.J.**

Orig:           Clerk  
cc:              Leda D. Wettre, U.S.M.J.  
                  Parties

---

2009) (noting that "the economic loss doctrine does not bar a fraud claim pled in the alternative when the validity of the contract is in dispute"); *Shapiro v. Barnea,* Civ. No. 06-811, 2006 WL 3780647, *4 (D.N.J. Dec. 21, 2006) (same); *see also Peters v. Countrywide Home Loans, Inc.*, Civ. No. 15-6329, 2016 WL 2869059, *4 (D.N.J. May 17, 2006) (noting that the economic loss doctrine does not preclude claims for fraud in the inducement of a contract "because fraud in the inducement is fraud that induces the other party to enter into the contract in the first place"); *Barton v. RCI, LLC*, Civ. No. 10-3657, 2011 WL 3022238, *7 (D.N.J. July 22, 2011) (recognizing that "[f]raud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations"). As both situations exist here, Plaintiffs' fraud claim may proceed.